On behalf of the State of Illinois, which is the appellant in the case, I am here on behalf of the petitioner or appellee, I'm Jackie Wilson. This case obviously has been through the jurisprudential ringer many times, and a lot of it is a matter of record. We've had a couple of trials, a couple of appeals, the PC, the Torture Commission, so I'm not sure how much time you sort of need. We would typically say 15 and 15, but I don't want to hamstring you, but then again, it's all in there. So what's your, what are your thoughts? I always take what I think will be the time and multiply it by two. So half an hour a piece? Correct, and I'd probably be finished before then, but maybe not as well. All right, we'll say a half hour a piece, but we're not really going to be following it that closely. We don't have anybody after you, and if we unduly harass you with questions from time to time, we might give you a little bit more time. Okay, great. Thank you, Judge.  Good morning, Your Honors. Again, Lawrence Rosen from the Office of the Special Prosecutor here on behalf of the State of Illinois, which is the appellant in the case. Just quickly, Your Honors, this case arose from a shooting of two police officers on February 8th of 1982. One individual, Mr. Fahey, was a ten-year veteran and left behind a wife and three children. The other officer, O'Brien, was a seven-year veteran and left behind a mother. He wasn't not disputed by either side. That is that Andrew Wilson, who was in the car that was stopped by the police officers on that date, was the shooter, and Jackie Wilson was in the car with him at the time. The two individuals were headed towards Cermak Hospital or Cook County Jail to break out an individual by the name of Edgar Hope. So actually on their way, before they were stopped by the police, they were in the process of going ahead on a felony by breaking an inmate, an arrestee, out of Cook County Jail. We're here for four reasons, Your Honors. Were they charged with felony murder? Yes. Okay. Well, Jackie Wilson actually, in the first trial, Jackie Wilson was convicted of both murders. So was Andrew Wilson. When it came back on the various appeals that took place, Jackie Wilson was convicted only of the killing of Officer Fahey, and it was primarily based on the responsibility provisions of the Illinois Criminal Acts, Your Honor. And what were the facts? The facts that he said that he was still breathing and Yeah, that's correct, Your Honor. What happened is that the officers, when they approached the car, asked both individuals to get out of the car. Before Andrew Wilson got out of the car, they brought with them a .38 stub nose revolver that he was going to use in order to break Edgar Hope out of Cermak Jail. Andrew Wilson had taken that gun and put it in the car before he exited the car. Jackie Wilson was the driver, Your Honor. When the police officers, Officer Fahey, excuse me, Officer O'Brien was the one that was pulled over. The other officer, Mr. Fahey, he was handling Andrew Wilson. At the time, the police officers discovered that there was a revolver in the car, and that is the revolver that Andrew Wilson had taken out of his possession and put it in the car. A wrestling match ensued between Officer Fahey and Andrew Wilson, who was Jackie's older brother. During this tussle, if you will, Andrew Wilson was able to get the gun out of Fahey's possession and shot him. Apparently, I think he killed him immediately with the Officer O'Brien, who was guarding Jackie Wilson. He jumped on the Caprice and shot him several times. Apparently, he did not kill him immediately. Jackie Wilson, according to the trial transcript, said that he's still moving, and then basically, Andrew Wilson fired more shots into O'Brien. O'Brien was taken to the hospital and he died in the hospital. He wasn't dead at the scene. And that's the essential facts that led to the ultimate indictments of Jackie Wilson and Andrew Wilson. And by the way, on retrial, Jackie Wilson was convicted only of the murder of Officer O'Brien and not Officer Fahey, and basically based on the responsibility provisions of the Elmore Criminal Procedure crime court, if you will. And so that was those were the basic facts that led to a whole series of cases that have arisen since then. The appeals and so on and so forth, which ultimately was before Judge Hooks in 2011 based on a Turk referral, and that is the Torture Inquiry and Relief Commission. That was the only thing that was referred for Judge Hooks to try at that particular time in 2011. There was no post-conviction proceeding pending at that time, and the Turk, in their recommendation, said while there was evidence both possibly proving Jackie Wilson's claim of torture, and evidence that refuted it, nevertheless by a vote of, I'm not sure what the vote was, but it was referred to Judge Hooks for basically a third stage evidentiary hearing under the Turk statute. And that case took place from 2011 on and eventually tried in 2017, I believe, and then ended in, and I'm referring to Michael DeVorkier, who was actually trial counsel, so that's why I'm looking in that direction every once in a while. You can call him up if you need him. Okay. I'd be happy if I did so. And can I just inquire, the purpose of that third stage hearing is what? Well, only under the Turk statute. That was the only thing that was to be decided. So what was the issue that you brought up? Well, if you look under the Turk statute, which has very specific language, it says that a Turk recommendation, a Turk case arises out of someone who claims, a living person who was convicted, that he was tortured. And if you look at the definition of torture under the Illinois Administrative Code that was part of the Turk rules and so on, it says severe torture that led to either, led to his confession and the confession was used at trial and he was convicted. And so that's what Turk says, that's what the referral was, and as I'll discuss later, that's not what Judge Hooks did, however. What relief, if any, would a defendant arguably be entitled to get? Well, that's an interesting issue, John. That's why we're here. That's why we're here. The Turk statute really doesn't specify, it sort of doesn't define its precise relief, but I would say, and apparently Judge Hooks, well not apparently, Judge Hooks believed that as a result of it not defining anything, I think that his opinion is clear that he wanted a certain result. And that result is something that you can get under a post-conviction statute, which is a completely different statute with completely different language, under a completely different code section, and to get the result that he wanted wrongfully and contrary to established Illinois law and the language of the Turk statute, he converted this case to a post-conviction case where he applied the world standard. You'll get to that. I'll get to that. Let's get to what my question was, which is what in your judgment is the relief that a defendant ought to be entitled to under the Turk statute under these circumstances? Well, this is just my opinion. But I essentially, if torture was found by the trial court judge, he could have suppressed the confession or he could have sent it back, but my opinion is he could have suppressed the conviction, reversed the conviction, and then ordered a new trial. Okay. Okay. Isn't that what he did? Well, but under the wrong evidence. Isn't that what he did? He did do that. You said that he could have suppressed the confession, reversed the conviction, and that's what he did. Now, you have a beef about it. You disagree with the bases upon which he did it, but in your judgment, according to Turk, that is something that the judge in this position could do. It's just my opinion. There's not a whole lot of cases on the Turk statute, unfortunately. Unfortunately. Yeah, because it was enacted in 2009 and just not enough cases have arisen, so no court has examined that in depth. But the problem is he took all the evidence, though, and viewed it under the wrong standard. He viewed it under the Wuerl standard, which we'll discuss in length when we want to. What's so wrong with Wuerl? I was on that one. I understand, Your Honor. But that's a post-conviction case. We're talking about constitutional violations. We're not talking about the specific language that is under the Turk statute. And the Wuerl standard is, as you know, Your Honor, what you do is you take a look at the evidence, the newly discovered evidence, and you essentially say, okay, had the trial court during the suppression hearing had this newly discovered evidence, which more often than not is the pattern and practice of the various individuals involved, he would have possibly reached a different decision. He might have granted the motion for suppression rather than denying it. That's the Wuerl standard. And in the Wuerl standard, there's some case law obviously to the effect that not even the credibility of the individual who's convicted is an issue. It's really a focus on the newly discovered evidence and what impact it might have had on the trial judge, which is essentially what the approach that Judge Hooks did here, Your Honor. But that's not the Turk statute. That doesn't fit within this language of the Turk statute. And as a matter of fact, in the Christian case, which this court had decided, they said it's the plaintiff's, that is the movement, the individual who's applied for Turkish or whatever, yeah, that says that it's a preponderance of the evidence that the plaintiff has to establish to prove his case of torture not prove his case of what the trial judge might have done differently, but he's got to prove torture. And that's not what this judge, Judge Hooks, did in this case, Your Honor. What he did was he said, I'm going to apply the Wuerl standard, which is not supported by the Turk statute. And then he put the burden on the state to prove that the statement was voluntary. Not that whether the individual, you know, we weren't in a position to refute the claim of torture and it wasn't a situation where Jackie Wilson was. You would have a bit of a problem in doing that anyway because most of the people who were part of the questioning were pleading the Fifth. But I disagree, Your Honor. Why? I disagree for the following reasons. And there are a couple of reasons for it. If you look at the opinion that he, most of the pattern and practice that was initiated involved John Burge. The two officers that interviewed or questioned Jackie Wilson were an individual by the name of McKenna and O'Hara. They did not have the same pattern and practice that John Burge had. Not anywhere near the same amount. And furthermore... So what was the difference? They were punchers and slappers and not... Well, actually, you know, Your Honor, and this is why we say the judge's decision was wrong as a matter of manifest way to the evidence standard here. Andrew Wilson was arrested at early morning of February 12th of 1982. Oh, was it like four days after? Yeah. Jackie Wilson was arrested by about 8 o'clock a.m. By the time that Jackie Wilson was brought to Area 2 for questioning, which was around 10 a.m., Andrew Wilson had already confessed to the crime and admitted that he was the shooter and Jackie Wilson was the driver of the car. Moreover, at the criminal trial, Your Honor, while Andrew Wilson testified about the beating that he'd got, the same officers that interviewed Jackie Wilson, which were McKenna and O'Hara, Andrew Wilson testified that he was treated well by those particular individuals. That was not the group of people in the Andrew Wilson interrogation that apparently had beaten a confession out of Andrew Wilson. So you have... Furthermore, Your Honor, at the suppression hearing, John Burge didn't even come up. He was not one of the individuals named that had interrogated Jackie Wilson here. And that's just incredibly against any credibility on the part of Jackie Wilson because the first time that John Burge's name was mentioned as one of the individuals that had interrogated Jackie Wilson was in 2011 when he brought his TURP petition. And think about that. I mean, he's claiming that John Burge walked in with a black box that created an electrical current that he placed on his hands, as John Burge placed on his hands, an electrocutor. If that really happened, how could you not remember that back in 1982 when you were presenting your evidence as to why your confession was a result of torture? How could you possibly not remember that? But there's no doubt that he was consistent throughout the early parts of all of this, the suppression hearing, talking to his lawyer, all of that, that he'd been slapped, elbowed, kicked, a phone book hit in the head, hand was twisted and stepped on, a threat to break his fingers, shoved, touched, kicked, and shaken, and a gun in his mouth. He was very consistent about all of that, throughout all of this. That's his claim as to what... From the very beginning. Not what Burge did from the very beginning, but what the other officer supposedly did. Supposedly kicked in the groin and urinated. And had a gun in his mouth. And gun in his mouth. Slapped around both with open hands and fists. While he was supposedly handcuffed in a part of Area 2, which, by the way, had no rings. Well, it brings in later pictures. We don't know what it had that day. Nobody knows what it had that day. Well... Do we? The people back in 1982, who were there at the time, testified that it had no rings. But more importantly, if you take a look at Jackie Wilson's picture, Your Honor, and I hate to use the old statement that a picture is worth a thousand words, and I have it here, and it's part of the record. This is the picture that was taken five days later? No. This was the picture that was taken the same day... Is this the picture that was lost and somehow it got found? This was the picture taken around the time that he'd signed his confession. Is this the Polaroid picture that the court reported to? That's correct. Where did you find it, if the clerk of the court couldn't find it? Well, I could give you the... Yeah, here. Can I? I'll show you. I don't know. Everything in our record says that it was lost. It's part of the record, Your Honor, and it was introduced at trial. And I'll give you the record number. And while I'm at it, I'd like to point out that things do get lost from criminal files because people paw through them and take stuff. Correct. So this is the one that was taken by the court reporter? And here's a blow-up of it. And I actually... But this was taken by Mr. Hartnett? Yeah. And it's part of the record... It doesn't show his hands, does it? It's C... Oh, that's the line-up. Hold on. I may have given you one. But it's around the C-1652 range, Your Honor. Okay. But this one that was taken by Mr. Hartnett does not show his hands? No, but we have line-up pictures that show his hands, Your Honor. Laying up from a different day? No. The line-up occurred on the same day a few hours later, Your Honor. Right. And I'll show you those. And that is C-1655. I'm sorry if my colored printer... No problem. I'm going to pass you another one. But if you look at the picture that was taken, around the time he signed his confession at 12.30 p.m., he came in to Area 2 at 10 a.m., according to the witnesses, he gave a statement around 10.30 a.m., which was recorded. Okay. So the picture wouldn't show if he'd been kicked in the groin, elbowed in the ribs, shaken, had a gun in his mouth, was hit by a phone book. The reason they hit people with phone books was so they wouldn't leave marks. Well, all I can say, Your Honor, is that if you take a look at this picture, it doesn't look like anyone that has had a gun in his mouth, hit with a phone book, kicked in the groin, urinated. And if you take a look at the line-up picture, which shows his hands, it doesn't show that his hands were in any way hurt. Okay. And if you look at his statement, Your Honor, which is also obviously part of the record, his statement was exculpatory, not inculpatory. And so really what he was saying was, if you look at the statement, and I'm paraphrasing it, but I was going with my brother, we were breaking Edgar out, out of Cermak Hospital, we get pulled over by the police, I don't have a gun, Andrew Wilson has a gun, hops out of the car, all of a sudden starts shooting, killing one officer and fatally wounding another, and I was scared. I didn't know what was going on. All I was was the driver. And that's what the statement shows. So when you look at the totality of the evidence, the picture, the line-up, we also have a picture of him standing by the brown caprice and pointing it out, the exculpatory statement, and so on. The fact that he never raised John Burge at the very beginning, when he was supposedly electrocuted and so on, the evidence just, to put it bluntly, shows that he was making it up. He was lying. At that point in time, there was no reason to physically coerce a confession out of Jackie, because by the time that Jackie was questioned, Andrew Wilson had already given a confession, admitting the crime. And I don't say this flat. A confession that was later found to be tortured out of him. And I don't deny that, Your Honor. I'm not denying that. But I will add that the two individuals that supposedly were part of an interrogation of Andrew Wilson was the same that when Andrew Wilson testified at a civil trial later. He said that those two guys weren't involved in the brutality. But a review of other TIRC hearings does show a pattern in practice, certainly from McGuire, who was in the car, allegedly elbowing him, from O'Hara, from McKenna, and several other players in this whole thing. And Jackie Wilson's statement didn't name. He said six or eight law officers were in the room with him. He didn't give their names. So we don't know if they were any of the other guys. All I can tell you is that the two individuals that were there who said that they did the interrogation who were part of taking the statement, you know, they obviously testified that the suppression hearing they had done. But these are the two same individuals that Andrew Wilson had testified after being beaten, which I don't deny, didn't touch him at all. I'm trying to figure this out. Are you saying that Andrew, that Jackie Wilson would have a better case here if he had admitted that he was involved in the killing? No. What I'm saying is that the fact that he gave an exculpatory statement shows that his statement was voluntary rather than coerced, because he thought he was getting himself off the hook, Your Honor. He was claiming that I didn't do it, my brother did it, I was surprised, I didn't know what he was going to do, and I was scared. So the point of the voluntary, the exculpatory nature of the statement... That's a pretty big leap in logic. I can see why you would come to it. KK says that, Your Honor, that people who tend to be not guilty want to give exculpatory statements thinking they're getting themselves off the hook. I understand you disagree with Judge Hook's determinations on credibility and evidence. But I'm still having a problem figuring out what your argument is as to what is the burden and what should have Judge Hook, what should he have done in this case that he didn't do? Okay, I'll answer that, Your Honor. If you take a look at his decision, it's clear that he's applying the world standard. Which we all know is bad. And what is that standard? You take the totality of the evidence... Is it preponderance? What it is, essentially, is you take a look at the newly discovered evidence and you take a look at it and see whether that newly discovered evidence would have changed the trial court's decision on his motion to suppress. It's not even an issue of whether there was torture or not torture or coercion or not coercion. Yeah, it would likely have altered the result of a suppression here. Correct. That's the standard in a post-conviction case. If you look at the Turk language, the Turk language talks about torture, severe torture that led to a confession that was used at trial that gave rise to a conviction. So this wasn't severe enough? No. What I'm saying is the judge didn't apply the Turk statute at all. He completely ignored it. And furthermore, under the Turk statute, he ignored it. Take a look at his case. I know that's... Well, our cases have said it's similar to a third-stage evidentiary hearing. But it's to the extent that there's an evidentiary hearing, Your Honor, and maybe the rules of evidence cases have said that the rules of evidence don't apply in post-conviction cases like they would in other cases and in Turk cases as well. So that's the similarity. But the Turk statute is a preacher of the legislature, Your Honor, and they have very specific language. And in that case, they talk about torture used at trial that gave rise to a confession. That's not what the post-conviction statute says. If you took every Turk case and decided to apply the world standard, it basically negates the language of the Turk statute, where the post-conviction statute talks about substantial violations of  And that's not what the Turk statute says. It says that an individual has a claim if he can show that he was tortured. And, you know, I can I can... Do you want me to read the specific language, if you will? I can refer you to it. And in the Christian case, the Court said that it's the individual moving having a case under Turk, it's his burden to prove essentially tortured by the preponderance of the evidence. The claimant has the opportunity to demonstrate by a preponderance of the evidence that his confession resulted from coercion. That's right from Christian. Yes. And that's not what happened here, Your Honor. If you take a look at the judge's decision, he didn't even do that. Even in his findings of facts, he took all of this pattern of practice, and then he says that had Judge Crowley back in 1982 or whatever time the suppression hearing was heard, had this evidence about Berg and some of the other things that went on, he would have probably granted Jackie Wilson's motion for motion to suppress the confession. That's not the Turk's case. Judge, is it your position that and I understand you don't think this happened, but if in fact during this hearing the judge determined correctly that the preponderance of the evidence showed torture, then you believe the judge would have the authority to just suppress the confession rather than remanding it to the trial court? I don't know for sure, Your Honor. I'm not the judge. I don't make the law, and I don't interpret. I could certainly see someone arguing that. It makes sense. I mean, it does make sense. But our position is not only that the judge here applied the wrong standard, the world standard, and put the burden on us to show the voluntariness of the statement, which is wrong, but the whole decision had garnered the facts and argued the facts as if this was a post-conviction case to be decided on the world. That in and of itself is reversible error. Wouldn't it be problematic for this Court to find that the defendant has to bear the entire burden of proving that his confession actually resulted from coercive techniques? Well, that's what the Turk statute says. It's not proving it by beyond a reasonable doubt. In many civil cases, Your Honor, it's the plaintiff's burden to prove his case by the preponderance of the evidence. The Turk statute is a civil statute, just like the post-conviction statute is a civil statute. And actually, the same burden of proof applies. It's the petitioner's burden of proof here. No, I think that that's what the Turk statute provides. That's what he has to prove, that he was the perpetrator. Well, once he did that, did the burden then shift to the State to prove that he wasn't tortured? Of course, yes. And how were they going to do that with all these people taking the Fifth? Like I said before, tactics, credibility. Another thing that the judge didn't allow us to do was cross-examine Jackie Wilson with his statement, okay, which I said before was exculpatory and shows that that was voluntary. That was one of the things that the judge didn't allow us to do. You know, if you take a look at the evidence about how Jackie Wilson completely made up this burst, and it never arose back in 1982, which to me is just incredibly inherently an indication of how he made things up. When you look at the pictures of how he looked, you look at that he didn't need to torture him. And as I said before, I admitted that Andrew Wilson, you know, had the judge applied the right standard and the right burden of proof, yeah, we think he would have come back with a different result. It's very different to say that the newly discovered evidence would have caused the trial court judge to do something differently on a motion to suppress versus the issue of whether or not the individuals proved tortured. Those are very different analyses, which is what happened here. The judge didn't apply the right analysis and he didn't apply the right burden of proof. He was simply wrong. Okay, I think we've got your thirty if you need any more. Well, I have a few other things, but... Well, go ahead. We will indulge you. I got on the issue of the inability to cross-examine him on the confession, which was exculpatory, so I won't go over that again. I talked about the evidence about the pictures, the made-up thing about John Birch later on, the no need to coerce him because of what happened to Andrew Wilson before to show that the decision was contrary to the weight of the evidence even though the wrong standard was applied. And lastly, and we point out and we do this with the utmost respect for Judge Hooks, nevertheless, at some point during the trial, based on what we believe is extrajudicial information, went after the Chicago Police Department, went after our office, special prosecutor, went after the assistant state's attorneys and so on and so forth, which created a bias that caused him to decide the case based on evidence that went beyond the record, and that we met it back to a different judge that doesn't have the bias that this judge had. You did file a motion along those lines, did you? Yes, we did at some point. And what happened with that? Did you withdraw it? There was an agreement. Well, one of the things that happened during this was that the judge had said that he believed that our office was basically acting as attorneys for John Birch and all these other officers that were accused, which obviously is not the case. We tried a case based on the evidence as we saw it. Right, but at some point you filed a motion to substitute the judge on bias grounds? Right, correct. And what happened with that? It was hard for me to figure out what happened. One of the things he wanted was he wanted us to produce records, billing records and so on. And at first he promised... The question is though, what happened with the motion? He withdrew that request. He didn't want to see our zoning records anymore. He basically quit his accusations that somehow we were really... So you withdrew the motion? And there was an agreed order that withdrew the motion. That's what happened. But the bias didn't act. We withdrew the motion, but the bias didn't act, which is... Then why did you withdraw your motion? Pardon me? Why did you withdraw your motion? Well, we thought the bias would end here, but when we saw the last part of the decision and the very last conclusion, again, he went after the Office of the Special Prosecutor. He went after the Chicago Police Department. He went after the Assistant State's Attorneys that were involved in the case. But there seemed to me to be a fair amount of criticism leveled at both sides during this proceeding by the judge. Yeah, but in my opinion, Your Honor, the criticism for the other side, and again, I respect this very highly, resulted from things that occurred at trial. The criticism that we incurred were things that he based his criticism on things outside of the record, which to me is a significant difference. Okay. All right. Thank you, Your Honor. Well done. Good morning, Your Honors. I first want to set the stage here. This is the seminal case of police torture in this city. By John Burge and the men working under him, those people self-described, self-named as Burge's ass-kickers. And who were Burge's ass-kickers? Well, some of them were the O'Hara and Eusitis and McKenna, the O'Hara and Eusitis. Now, in this case, we presented, and the Court had, a remarkably powerful and detailed record of newly discovered evidence. Evidence that supported Jackie Wilson's claim that he was entitled to a new trial and suppression of his confession, which was a product of torture. This evidence has been an official campaign to suppress it over the 35 years since Jackie Wilson had his one and only hearing in 1982. And 35 years after the Court, this Court, on a record that has no semblance to what Judge Hooks had, made the decision that it did in Jackie Wilson's appeal. But we are here not to determine what counsel's opinion is of the evidence. We are here to look at Judge Hooks' decision. Judge Hooks gave us a decision, a 119 page decision, Your Honors, in which he discussed all of the evidence. He discussed and evaluated all of the evidence that was presented in a four day hearing, that was that was presented in over 60 different presentations of prior testimony. They would say that many of his findings were beyond the manifest weight of the evidence or that he abused his discretion. That's a pretty tough duty to try to satisfy those standards. It's one heck of a duty to satisfy. And in our brief, we cite that standard. It has to be, I think, completely unreasonable, not based on the evidence in arbitrary, I think the court's cases say. And you can see from his order, each piece, each finding is cited to the record, Your Honor. Of 265 findings, that buttresses what he wrote in the first 55 pages, which also is his summary of that same evidence, what he saw to be the most important aspects that he was relying on. And also, he discussed in a very clear way what he thought the proper standards were. And if you look at C 3062 to 3064 on the record, which is part of his decision, he discusses quite clearly the standards that he's applying, and he looks at cases, particularly the Gibson case, and other cases which were, of course, but Gibson is a Turk case. And Gibson decided that the standards that should be used in a Turk case certainly shouldn't be higher than they should be in a third-stage PC. And in fact, that was the analogy that Gibson made. And that's the analogy that the court accepted. Didn't that case also indicate, though, that it was your burden to show by a preponderance of the evidence that the torture had occurred? Should he have done that? No. Isn't that what the case you just cited? Gibson. No. Gibson doesn't say that. It does. It's the Christian case that refers to that. Christian came before Gibson. Christian came before Wuerl. And Christian relies not, and we keep hearing about the Turk statute. The Turk statute doesn't say anything about preponderance of the evidence. What do you believe the burden is? I believe that it's a two-stage burden. I believe that initially he did the right thing in terms of looking at whether the suppression hearing would have turned out likely different than it did the first time around. And once he determined that by a preponderance of the evidence, then he went on to very carefully do what a trial judge is supposed to do in a motion to suppress. He went through the three stages. What authority do you have that the judge is supposed to do that in this type of a hearing? The fact that in a Turk hearing, is there any authority? That Gibson says that a Turk claimant who has an extraordinary claim shouldn't be held to a higher standard than a third-stage PC. And the analogous third-stage PC in a torture case is Wuerl. And when Christian made reference to, and as I started to say, Christian's reference is not to the statute itself, it's to the website. It's to the Turk website. The Turk is not the legislator. So in Wuerl, though, Mr. Taylor, didn't the court remand the matter to the trial court to conduct a new suppression hearing? Yes, because we had a different situation there that the judge in Wuerl ruled against us. And so he didn't make any findings in terms of a motion to suppress. So there was no record to review? Is that the difference? Well, there was a record, but the Wuerl court didn't take it upon itself to grant the motion to suppress. It did make some very strong statements, if you see at the end. It said, given the Fifth Amendment, given the fact that there's no evidence here that the State could put on, in our view, it seems unbelievable to us that they could meet their burden on a motion to suppress. That's right at the end of the Wuerl's decision, but in fact, it didn't take it upon itself to grant the motion to suppress. What Judge Hooks did was because he felt Wuerl had been satisfied, he then went on to rule on the motion to suppress with the same body of evidence because we were all trying all of these different aspects of the torture case. But that's generally done even in a third-stage post-conviction hearing, is it? I would think so. If the judge grants the third-stage hearing, then you get a new trial or you get whatever relief. In this case, because it's about a confession, then what you're dealing with is a motion to suppress. You could get a PC on another basis and then you get a new trial. It might not have the suppression issue in it, but then if you grant if that PC were granted, I suppose if the State didn't appeal, then you go right to the trial. If the State appealed the PC, then this Court would rule whether the granting was appropriate or not. And if it did, like, it would go back for the trial. But Judge Sessions saw, I think quite rightly, and you can read what he did, he very well thought it out, and he took both stages because we all agreed to that. We all knew that what we were trying here was whether this confession should come into evidence and whether there was it was likely that if it were at a new motion to suppress, that the outcome would be different. But, Your Honors, even if you don't accept the analysis that Judge Hooks did in his first stage, you have a record here that supports a finding by a preponderance of the evidence that Jackie Wilson was tortured. There's no question that you can decide that yourselves if you decide that the standard that you think is appropriate is the standard that they're proposing rather than the standard that Judge Hooks used, that being the world standard as the first step. Because when you look at this entire 119 page opinion, and then you go and you look back at the evidence that supports this opinion and all these facts, you can certainly say that even if Judge Hooks took the wrong approach and that his belief that a third stage PC is the equivalent to a Turk hearing in terms of the standards that you all can say you can affirm him under Johnson, the Supreme Court case, on that ground. How do you reconcile what Judge Hooks did with the Christian case? I'm sorry? How do you reconcile what occurred in this proceeding with the Christian case? I can reconcile it in several ways. First of all, Christian came before Gibson. Christian came before Wuerl. Christian was about collateral estoppel. It wasn't about the standard. It wasn't dealing with the standard. It was dealing with collateral estoppel. And Christian also was relying simply on the website. It wasn't relying on the Turk statute. You can't find in the Turk statute what the website says. So, yes, I think that Judge Hooks was correct in following Gibson and saying that a torture claimant shouldn't be held to a higher standard than a regular PC third stage evidentiary hearing. But as I just said, if you don't agree with me, then I think that you can certainly affirm on any ground and the ground would be that there was a preponderance of evidence here. How can you look at this record? How can you look at his 119 page opinion and not say that there was a preponderance of evidence here and that Jackie Wilson was tortured? And I can go through that evidence with you and I will highlight some of it. First of all, he looked at Jackie Wilson's testimony and he saw that in the main it was consistent. That in the main it was consistent and he looked at the things that weren't consistent and he evaluated why that might not have been initially brought forward at the motion to suppress in 1982. We have to put ourselves back to 1982. 1982 is not 2019 where we're painting on a canvas of 35 years of evidence of a pattern and practice of electric shock, a pattern and practice of Burge coming into rooms, coming into Andrew Wilson's room and bringing the box in, a pattern and practice of electric shock. If you're a lawyer, Richard Kling, in 1982 and your client says, I was electric shocked, that as Judge Hook said, would be thought then to be a fantastic story. It's not a fantastic story now. It's proven. It's part of the evidence in this case. And that is how he looked at that and why wasn't Burge identified initially? That's not what Mr. Kling said in the record. What he said was that claim was never raised to him, I think. He said that he didn't write it down and he thought that he would have, but 35 years and hundreds of murder cases. He couldn't remember. He had a lack of recollection. Yes. He completely lacked... He thought that if he had been told that, he would have noted it. He said that, but I would assume any lawyer would say that and Judge Hooks looked at that and he evaluated that and he said, he put himself back in 1982 and said, that was a death penalty case. There were reasons perhaps that Kling didn't put it in, but we've got to remember, Jackie Wilson did tell Andrew Wilson that he was electric shocked the next day on February 15, 1982 and Judge Hooks found that to be a fact. And that remarkably was said by Andrew Wilson back in our case in 1988 and I was able to find that deposition and bring that as evidence. Jackie had told his brother, Jackie said he told Kling and then the first time after the hearing in 82, when he had a chance to testify, you have to remember, he didn't have any occasion to say anything from 1982 on the record until 2011 when he testified in a case called Logan, where he was a witness and then he introduced for the first time on the record, Burge and the electric shock. And think about what Burge's M.O. was. He was a lieutenant. He didn't do the interrogations. He, by his own testimony would stand by the door. He would monitor them. And he even said he wasn't involved in Andrew Wilson's torture. Look what that got him. It got him fired and a stint in the penitentiary for perjury. Of course he was involved. Of course he brought the black box in there. And that's what, there's no dispute about that. And that was happening down the hall from where Jackie was being tortured. Down the hall at the same time. And it's not true that Andrew confessed in the early morning. Andrew did not confess until 6 o'clock at night. That's an undisputed fact. He was tortured all morning, right down the hall from where Jackie was. They were going in and out of both rooms. O'Hara, McKenna, Burge, and both torturers. That was the gang. And they were using the same kind of tactics on both of them. And let me say something about the confession. It's not true that it was exculpatory completely. They were able, these were seasoned homicide detectives. They were able to get Jackie to sign a confession that made him accountable. Because they, it wasn't, he said it was in the transcript. It wasn't in the transcript that Jackie said he's still moving or made himself accountable. It was in his confession. There was no other evidence that Jackie said that. Jackie denied that. They forced him, very smart homicide detectives, to make him accountable in his confession. It wasn't exculpatory. It was inculpatory in terms of accountability. But let's look at all the evidence of those five days. And look at the evidence, not only of Andrew being tortured at the same time as screaming, and that screaming, we had testimony from an African-American detective who came in and broke the code of silence and said that he heard screaming when he approached the Area 2 that morning. And we had another black detective who many years later came forward and said she heard screaming too. And we had two people in that building, Doris Miller and Derek Martin, who said they heard screaming. And Derek Martin not only said he heard screaming, but he heard Jackie Wilson being beaten in the next room. They thought Derek Martin had something to do with the crime, so they also beat him that morning. That evidence is in the record as well. But not only did they do that to those men and women in that building on the 14th, with all this screaming going on, and all these threats, and with a state's attorney who was there, who later was found to have hurted himself, and who took the Fifth Amendment, and who said to Jackie Wilson, get the jag off out of here when he wouldn't confess, and said something similar to Jackie Wilson when Jackie Wilson had the my lawyer's name on it. And what else do we have? Isn't it interesting that in both Jackie and Andrew's confessions that the state's attorneys did not harm him, these state's attorneys, did not put in either confession the fact that they'd been treated voluntarily, they hadn't been threatened, that there was no kind of brutality. And we had undisputed evidence that they agreed to that said that was the practice of the state's attorney of Cook County at that time. You put it in there. And the court reporter said, jeez, I didn't care whether they killed him. I thought he would be dead before they brought him in here. And no, I didn't do anything when he left out the voluntariness. I don't do that. That's not my job. It's not my job. The court heard all of that evidence. The court said that in fact, when it came down to it, that court reporter that they called supported our position rather than their position, that he was part of the pattern in practice. And what was that pattern in practice? Not just the way Derek Martin was treated, not just the way Andrew Wilson was tortured, not just the way Jackie Wilson was tortured on that morning, but let's go back a day. When they thought they had the killers a day and a half before. They had Donald White, his two brothers, Anthony Williams. They thought that they all knew something about the murders, and they thought that Donald White was the trigger man in the murders. And what did they do to them? Oh, the guys who weren't involved in this pattern in practice? O'Hara, McKenna, Hill, and Verge. What did they do at police headquarters? And this is undisputed in the record. They tortured Donald White the same way that they tortured Jackie Wilson. With a gun in his mouth, with a telephone book through his head, with a bag over his head. What did they do to his brother? They beat him too. What did they do to Anthony Williams that day or two before? Same thing. Undisputed. We put that evidence in front of the judge. So we had not only evidence that day of the pattern in practice, but of what happened before. And what else did they do, your honors? For five days, they terrorized the black community looking for these men. They pulled people out of their houses. They tortured. And Verge was in charge of this. And two of his right-hand men at that time were O'Hara and McKenna. And they pulled people down to Area 1 and Area 2, and they tortured them because they thought they knew something about this case. And they kicked down doors. Bus drivers. Just regular people's houses were terrorized. That's all in the record. Undisputed. And in the opinion itself, you have to read that opinion. And you tell me whether you think that Judge Hooks would have filed and was or you could say anything other than we proved by a preponderance of the evidence that Jackie Wilson was tortured. If that's the standard that this court decides they want to use. And the Seventh Circuit also found that the Chicago Police Department in 1982 and Area 2 and John Verge had a pattern and practice of torturing suspected cop killers. That's all the evidence. That's not all of the evidence. That's a good piece of the evidence that the judge summarized. And how about the remissions that Verge made? How about those? Caddick, a guy who sat at a bar on the south side with Verge and the bartender who was also Verge's girlfriend, says tell Caddick what you did to the Wilson brothers. And she goes like this. Crank. Verge turns all red. He tells Caddick later that yeah, he tortured the Wilson brothers. He was  He didn't torture them. He just started an understudy. And how about Diane Panos, a young lawyer who was just starting out who had the misfortune of going into a bar with her cop friend that was her boyfriend. And Verge comes up. And he's going to brag on her. She says she wants to be a defense lawyer. What does he say? Basically, defense lawyers are scum. There's no defendants shouldn't have the rights under the fourth, fifth and fourteenth amendment. And also I beat, we beat we beat the torturers, the Wilson brothers. This woman was terrified to come in. She didn't want to talk. She came to my office. She was angry at me that I knew about her. But she told the truth. She told the truth to the federal grand jury in Verge's perjury trial. It's another admission. So So what's your request for relief here? You want to affirm what Judge Hooks did below and send it back for a new trial where the confession evidence doesn't come in at all, all that stuff stays out, that's suppressed? Or should it go back for another suppression hearing as well? No, no. Why not? Because Judge Hooks carefully looked at the evidence and if you see at pages I think C3066 perhaps to the next four or five pages he does the analysis of why the confession should be suppressed and suppresses it. He suppresses it, which he had the right to do both under the Turk Act and as the judge that was hearing the case. He says the evidence is going to be identical. What is it in the Turk Act that gives him the right to make that ruling? Just on suppression. I believe it says notwithstanding the status of any other post of the petitioner, if the court finds in favor of the petitioner it shall enter an appropriate order with respect to the judgment or sentence in the form of proceedings and such supplementary orders as to rearrangement, retrial, custody, bail or discharge for such other relief as may be granted. And that So that would be under the That also doesn't say here with respect to the judgment or sentence in the form of proceedings. So it makes no sense I think to send it back to him to do it again. I mean he did it and he did it on this evidence. They have no ability to rebut our case. And they didn't and couldn't. Their people were on the 5th. The one person who wasn't on the 5th was so discredited both by the police board that being O'Hara and by Judge Lesko in federal court that she wouldn't even admit his prior testimony. They have nothing. They hearten it. The court reporter goes in our favor. Hyman took the 5th amendment. The court was and you should be I would think as well quite disturbed by not only police officers taking the 5th to each and every question here and Judge Hooks drew an inference in our favor on that behalf but that state's attorney, the head of the felony review division took the 5th and he came into court and did it. And he flaunted it in front of the judge. He said to the judge basically, hey, I'm taking the 5th but don't take any inference from that. He said that to the judge. So the judge quite rightly pointed out that under Gibson and Wuerl that the 5th that he can and should take an inference that in fact Jaffee Wilson was tortured because McKenna, who was there, took the 5th. Burge, who was alleged to be there, took the 5th and Harlan took the 5th. So you can look at this record, Your Honor and you can also look at how Judge Hooks how he carefully did the two-part analysis and I suppose if you think that the website site and the earlier Christian case should control rather than Gibson saying that it's akin to a third stage PC and that therefore that stage, the way he did it, is correct that you can affirm in any regard in either regard, I should say not any regard. And this record totally supports that. I urge you to read his opinion in light of the arguments that are made. It is a remarkable opinion and it is manifestly erroneous in terms of the findings of fact that as you pointed out, Your Honor, that's a very very high standard. They don't even really make any arguments either. They may well have forfeited that. We argue that they did. And if they can't overturn the findings of fact that there's no way that we haven't proven what we needed to prove. I haven't been watching my watch. I guess I haven't... Yeah, you've said enough. I've had... You can find the mute button on the clicker. It might not exist. I don't know. I think my wife will use that against you, Judge. Thank you, Your Honor. Sure. Quickly? Yep. First of all, Christian decision was decided after war. The Christian decision came out in 2016 and it was a mistake that Mr. Taylor made. I don't think it was intentional, but the fact of the matter is that the Christian case was decided after war. Oh, sorry, Your Honor. I thought I was loud enough that I didn't hear him at any time. Second of all, Your Honor, the church statute might not provide what the burden of proof is and what the standard is, but it's a civil statute, not a criminal statute. And under virtually every civil statute I know, unless it says to the contrary, the burden of proof is by the preponderance of the evidence. And the statute didn't need to say that because it's a civil statute. Criminal cases you prove by beyond a reasonable doubt. Civil cases, if you have the burden, you prove by the preponderance of the evidence. So the fact that the statute doesn't say anything about it doesn't mean that that statute doesn't apply. Third, if you read the decision, Your Honor, it's clear that Judge Hooks applied the wrong standard. He viewed this from the lens of a world case. His findings of facts were based on a standard under the world standard. After many of those findings of facts, he would state in a conclusory paragraph that had Judge Crawley known this information, he may have had a different result on the motion to suppress. Not on whether the torture, but on the motion to suppress. And so the whole Hooks decision is based on the world standard that simply didn't apply in this case, Your Honor. He looked through this case through the wrong lens. He said there was an agreement that we tried this case based on the world standard. Not only did we not try the case based on the world standard, that came up way after the fact. But if you look at their initial briefs that they filed in this case, Your Honor, they said that we had approved the Turk claim by the preponderance of the evidence. They didn't say anything about the world standard applying. So if there was an agreement about how this case was going to be tried based on what they submitted in the brief and the approach we took, we relied on the Turk language that said it was their obligation to prove by the world standard that there was torture that he confessed and that confession was used as trial. The fact of the matter is Judge Hooks applied the wrong standard, period, Your Honor, both by applying the world standard and by putting the burden of proof on the State to prove that the statement was voluntary. And that in and of itself is grounds for reversal. It's a de novo review by this Court because it was a question of law that he decided. And on that basis alone, the decision of Judge Hooks should be vacated. The confession should be reinstated. And their release should be denied. Okay. Thank you, Your Honor. All right. We've read some pretty interesting briefs and heard some very compelling arguments and we'll take the matter under advisement.